AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Grey Samsung Cell Phone<br>Seizure No. 2022250400183101-0004<br>("Target Device") | )<br>)<br>)<br>)<br>)<br>)     Case No.    '22  MJ3378 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jose Rubio Jr., HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**telephone**      *(specify reliable electronic means).*

Date:    September 19, 2022

_____
*Judge's signature*

City and state:   San Diego, California

Hon. Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Grey Samsung Cell Phone
>Seizure No. 2022250400183101-0004
>("Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 16, 2022, up to and including September 16, 2022:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

## AFFIDAVIT

I, Special Agent Jose Rubio, Jr., being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Gray Samsung Cell Phone
>
> Seizure No. 2022250400183101-0004
>
> ("Target Device ")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Delia LOERA ("Defendant") for importing approximately 66.66 kilograms (146.96 pounds) of methamphetamine from Mexico into the United States.  The Target Device is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2.     The information contained in this affidavit is based upon my training, knowledge experience, investigation, and/or consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

### BACKGROUND

3.     I have been employed as a Special Agent with Homeland Security Investigations (HSI) since May of 2020. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.     During my tenure with HSI, I have participated in the investigation of narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my

1  training, knowledge, experience, and/or conversations with other law enforcement officers

2  experienced in narcotics trafficking investigations, I have gained a working knowledge of

3  the operational habits of narcotics traffickers, in particular those who attempt to import

4  narcotics into the United States from Mexico at Ports of Entry.

5      5.      I am aware that it is common practice for narcotics traffickers to work in

6  concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is

7  to smuggle controlled substances into the United States from Mexico by concealing the

8  controlled substances in vehicles or on persons entering the United States at Ports of Entry

9  such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the

10 importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico

11 frequently communicate with the individual responsible for importing the concealed

12 narcotics into the United States.  These communications can occur before, during and after

13 the narcotics are imported into the United States.  For example, prior to the importation,

14 narcotics traffickers frequently communicate with the transporter(s) regarding

15 arrangements and preparation for the narcotics importation.  When the importation is

16 underway, narcotics traffickers frequently communicate with the transporter(s) to remotely

17 monitor the progress of the narcotics, provide instructions and warn accomplices about law

18 enforcement activity.  When the narcotics have been imported into the United States,

19 narcotics traffickers may communicate with the transporter(s) to provide further

20 instructions regarding the delivery of the narcotics to a destination within the United States.

21     6.      Based upon my training, knowledge, experience, and/or consultations with

22 law enforcement officers experienced in narcotics trafficking investigations, and all the

23 facts and opinions set forth in this affidavit, I am aware that cellular telephones (including

24 their SIM card(s))  can and often do contain electronic evidence, including, for example,

25 phone logs and contacts, voice and text communications, and data, such as emails, text

26 messages, chats and chat logs from various third-party applications, photographs, audio

27 files, videos, and location data. This information can be stored within disks, memory cards,

28 deleted data, remnant data, slack space, and temporary or permanent files contained on or

in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.    On September 16, 2022, at approximately 7:30 PM, Delia LOERA, ("LOERA"), a United States citizen applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #15. LOERA was the driver, sole occupant, and registered owner of a 2004 Toyota Sequoia ("the vehicle") bearing California license plates.

8.    A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the spare tire of the vehicle.

9.    A U.S. Customs and Border Protection Officer (CBPO) received two negative U.S. Customs Declarations from LOERA. LOERA stated she was crossing the border to

go to emergency room in San Diego, California. A CBPO used a K910B Buster density meter to take a density reading of the spare tire and received a higher-than-normal reading.

10. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the gas tank, spare tire, under the back seats, and the driver side quarter panel of the vehicle.

11. Further inspection of the vehicle resulted in the discovery of 141 packages concealed in the gas tank, spare tire, under the back seats, and the driver side quarter panel of the vehicle, with a total approximate weight of 66.66 kgs (146.96 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

12. LOERA was placed under arrest at approximately 8:45 PM. LOERA was arrested and charged with a violation of Title 21, United States Code, Sections 952 and 960, importation of a controlled substance.

13. The Target Device was found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from the Defendant and her Vehicle. The Defendant was the driver and sole occupant of the Vehicle and had dominion and control of all the contents.

14. Based upon my training, knowledge, experience and/or consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my training, knowledge, and experience, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training, knowledge, and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a

1   defendant after their arrest to determine the whereabouts of the narcotics. Based on my
2   training, knowledge, and experience, it is also not unusual for individuals, such as the
3   Defendant, to attempt to minimize the amount of time they were involved in their
4   smuggling activities, and for the individuals to be involved for weeks and months longer
5   than they claim. Accordingly, I request permission to search the Target Device for data
6   beginning on August 16, 2022, up to and including September 16, 2022.

7                                    **METHODOLOGY**

8          15.    It is not possible to determine, merely by knowing the cellular telephone's
9   make, model and serial number, the nature and types of services to which the device is
10  subscribed and the nature of the data stored on the device. Cellular devices today can be
11  simple cellular telephones and text message devices, can include cameras, can serve as
12  personal digital assistants and have functions such as calendars and full address books and
13  can be mini-computers allowing for electronic mail services, web services and rudimentary
14  word processing. An increasing number of cellular service providers now allow for their
15  subscribers to access their device over the internet and remotely destroy all of the data
16  contained on the device. For that reason, the device may only be powered in a secure
17  environment or, if possible, started in "flight mode" which disables access to the network.
18  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
19  equivalents and store information in volatile memory within the device or in memory cards
20  inserted into the device. Current technology provides some solutions for acquiring some of
21  the data stored in some cellular telephone models using forensic hardware and software.
22  Even if some of the stored information on the device may be acquired forensically, not all
23  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
24  data acquisition or that have potentially relevant data stored that is not subject to such
25  acquisition, the examiner must inspect the device manually and record the process and the
26  results using digital photography. This process is time and labor intensive and may take
27  weeks or longer.
28

1      16.    Following the issuance of this warrant, I will collect the Target Device and

2 subject it to analysis. All forensic analysis of the data contained within the telephone and

3 its memory cards will employ search protocols directed exclusively to the identification

4 and extraction of data within the scope of this warrant.

5      17.    Based on the foregoing, identifying and extracting data subject to seizure

6 pursuant to this warrant may require a range of data analysis techniques, including manual

7 review, and, consequently, may take weeks or months. The personnel conducting the

8 identification and extraction of data will complete the analysis within ninety (90) days of

9 the date the warrant is signed, absent further application to this court.

10     18.    Law enforcement has not previously attempted to obtain the evidence sought

11 by this warrant.

12                                        **CONCLUSION**

13     19.    Based on the facts and information set forth above, I submit there is probable

14 cause to believe that a search of the Target Device will yield evidence of the Defendant's

15 violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I

16 request that the Court issue a warrant authorizing law enforcement to search the item

17 described in Attachment A, and seize the items listed in Attachment B using the above-

18 described methodology.

19

20

21

22

23

24

25

26 \\\

27 \\\

28 \\\

1    I swear the foregoing is true and correct to the best of my knowledge and belief.

2

3                                            HSI S/A _____
                                             Special Agent Jose Rubio, Jr.
4                                            Homeland Security Investigations

5

6    Sworn and attested to under oath by telephone, in accordance with Federal Rule of
     Criminal Procedure 4.1, this 19th day of September, 2022.

7

8    _____

9    Honorable Mitchell D. Dembin
     United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28